UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT STEELE,

        Plaintiff,

v.                                    Case No. 8:10-cv-732-T-24EAJ

UNITED STATES DEPARTMENT
OF VETERAN AFFAIRS,

        Defendant.

_____/

## ORDER

This cause comes before the Court on a motion for summary judgment filed by

Defendant United States Department of Veterans Affairs, and Plaintiff Robert Steele's response

in opposition to the motion.[1]  (Doc. Nos. 19, 24.)  Plaintiff Robert Steele, a former employee of

the United States Department of Veteran Affairs ("the VA"), alleges that the VA terminated his

employment because of his age, in violation of the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 et seq. ("ADEA").  As explained below, the undisputed evidence shows

that Steele cannot prevail on his claim as a matter of law, and therefore, the VA's motion must

be granted.

**I.      Background and Facts**

Except as otherwise noted, the following material facts are undisputed in the record:  On

August 16, 2007, Steele was hired to work as a Registered Respiratory Therapist at the James A.

Haley's Veterans' Hospital, located in Tampa, Florida.  The effective date of his employment

---

[1]At the Court's direction, the VA filed a reply.  (Doc. No. 29.)  The Court then permitted
Steele to file a surreply.  (Doc. No. 31.)

was August 19, 2007.  Steele's employment had a one year probationary period.  (Doc. No. 19, Ex. C.)  At the time of his hiring, Steel was 53 years old.  Chief of Respiratory Care Christopher Wojkiewicz and Assistant Chief of Respiratory Care Rick Smith were aware of Steele's age at the time they interviewed and hired him.

### A.    Steele's Termination

At the end of Steele's one year probationary period, Steele's supervisors recommended that he be terminated from his position "due to unsatisfactory attendance and performance." (Doc. No. 19, Ex. D.)  With the assistance of the labor union that represented him, Steele submitted an EEO complaint of discrimination to the VA's Office of Resolution Management, which conducted an investigation into Steele's termination.[2]

As a part of that investigation, Steele's immediate supervisor, John Van Vliet, prepared a memorandum in which he detailed the reasons for Steele's termination.  (Doc. No. 19, Ex. E.) Van Vliet identified two instances in the first few months of Steele's employment when Steele improperly requested overtime and failed to follow the chain of command.[3]  In addition, Van Vliet noted that he received several complaints from the nurses that Steele had a "demeaning

---

[2]The Court rejects the VA's vague contention that Steele failed to exhaust his administrative remedies.  (Doc. No. 26, p.6.)  Steele's filing of the EEO complaint satisfied his obligation to seek an administrative remedy before filing his federal lawsuit.  *See Ray v. U.S. Veterans Affairs Administration*, 704 F.2d 1480, 1483-84 (11th Cir. 1983) (discussing the avenues of relief for a federal employee who believes that he has been discriminated against on the basis of his age).

[3]Steele, however, testified that he never requested overtime, and that there was never any incident that resulted from him improperly requesting overtime, or failing to follow the chain of command, as described in Van Vliet's memorandum.  Steele testified that Van Vliet's memorandum was "slanderous, bogus, lies." (Steele depo. at 26-31, 51-52.)

2

attitude" and was "not well received."[4]  The memorandum further documented that Steele never completed his competence orientation in the Spinal Cord Injury ("SCI") unit.  According to Van Vliet's memorandum, when questioned about his failure to complete this required orientation, Steele said that the Chief of Respiratory Care, Christopher Wojkiewicz, had misplaced the paperwork that documented Steele's completion of the orientation, and he refused to complete a new one because it was Wojkiewicz's fault that the paperwork was misplaced.[5]

According to Van Vliet, Steele "developed a negative attitude about the SCI area" where he worked, and requested a reassignment.[6]  Steele was reassigned to work in the main building of the hospital.  Van Vliet recounted that he again received complaints from nurses that Steele was "condescending to them," and that the nurses questioned Steele's ability to work in the intensive care areas.[7]

As a part of the investigation, Nurse Maria Rojas documented two examples in which she remembers having difficulty working with Steele.  (Doc. No. 19, Ex. F.)  First, Nurse Rojas described a situation in which she asked Steele to help her with a problematic vent.  She described Steele as "very sarcastic and patronizing in his response."  Nurse Rojas documented another instance when Steele refused to get a "stat blood gas."  According to the nurse, because

---

[4]Steele testified that he was not aware that several nurses complained about working with him.  (Steele depo. at 33.)

[5]Steele, however, disputes this fact.  He testified that he did, in fact, complete his competence orientation in the SCI unit.  (Steele depo. at 33.)

[6]Steele testified that Van Vliet wanted him to transfer to the hospital because the hospital needed more coverage, and that although he did not want to transfer, Steele agreed to do so because his help was needed there.  (Steele depo. at 34-35.)

[7]Steele testified that he was not aware of complaints, or that the nurses in the main building questioned his ability to work in the intensive care units.  (Steele depo. at 35.)

of Steele's refusal, another respiratory therapist had to be called to the floor to perform the task.[8]

Van Vliet further documented that he had received complaints from the nursing staff that Steele had his good friend and fellow Respiratory Therapist, Karen Ray, do the majority of his work. The nursing staff questioned his ability to work in the intensive care areas without Ray's assistance. Van Vliet also noted that, although Steele had proper charting while at SCI, the quality of his charting declined after he transferred to the main building.

Furthermore, Van Vliet documented Steele's inflexibility with respect to his work schedule. According to Van Vliet, Steele was unwilling to work weekends, and would have Karen Ray fix her schedule to allow him to keep a set schedule. Van Vliet commented that "[e]mployees with inflexibility make[sic] the entire scheduling process very difficult for the schedule maker and having adequate staffing for patient care requirements and needs of the service." Van Vliet furthermore noted that Steele exhibited a pattern of using sick leave next to a scheduled day off.

Van Vliet summarized the reasons for recommending that Steele not be retained as follows:

> The 11 month evaluation of Robert Steele's work has revealed poor communication with lack of willingness to work with management. He has not positively affected the nursing service with his attitude. He is inflexible with his schedule and has [a sick leave] pattern, specifically taking a day of sick leave in conjunction with a weekend and/or holiday. His ability to handle working in critical care areas without assistance is questionable. Several [Respiratory Therapist] staff feel[] he is not a team player. His documentation in the patient record is becoming inadequate.

Based on these reasons, Van Vliet stated that he "would not recommend retaining Robert Steele

---

[8]Steele testified that he did not recall ever working with Nurse Rojas, and that the incidents she described did not occur. (Steele depo. at 47-52.)

past his probationary status."

Several of Steele's supervisors concurred with Van Vliet's recommendation to terminate Steele.  Steele's second line supervisor, Assistant Chief of Respiratory Care Rick Smith signed Van Vliet's memorandum, noting his concurrence with the recommendation.  (Doc. No. 19, Exs, E, H.)  At the time, Smith was 54 years old–approximately the same age as Steele.  (Doc. No. 19, Ex. H.)  Chief of Respiratory Care Christopher Wojkiewicz also concurred.  (Doc. No. 19, Ex. E; Steele depo. at 46-47.)  In addition, Dr. William McDowell Anderson, Chief of Pulmonary, Critical Care and Sleep Medicine, wrote the following:

> Mr. Steele[sic] has some significant deficiencies in his performance, aptitude, cooperativeness and has demonstrated undesirable characteristics during his past eleven months.  I would not recommend that Mr. Steele be retained or converted to a "permanent position" as it would be more difficult to take corrective action once such status was acquired.

(Doc. No. 19, Ex. E.)  At the time, Anderson was 57 years old–approximately two years older than Steele.  (Doc. No. 19, Ex. I.)  Finally, Cynthia Laureano, another supervisor of Steele, expressed the following concerns regarding Steele in an email to Wojkiewicz:

> I am concerned about the possibility of Robert Steele becoming a permanent employee.  I do not feel he is a team player.  I have perused the schedules since his employment and he has worked two Saturdays throughout the year, those days were posted by the scheduler and not his self scheduling.  These two Saturdays were in July 2008.  He has scheduled himself 24 Fridays and has a 20% call off rate.  He is unwilling to have any flexibility with his schedule.  I am unsure if he is able to work alone.  He usually has help completing his assignment even when scheduled in the lighter areas.  He was initially hired for SCI and after 7 months he felt he could no longer work in that environment.  There have been nursing complaints from the SCI and MICU, SICU that he is belittling in his approach with them.

(Doc. No. 19, Ex. J.)[9]

Steele's employment with the VA was terminated effective August 16, 2008. (Doc. No. 19, Ex. D.) Steele was 54 years old. The vacancy created by Steele's termination was filled by a female who was 41 years old. (Doc. No. 19, Ex. K.)

**B.      Steele's Evidence of Discrimination**

In support of his opposition to the summary judgment motion, Steele submitted the following evidence: declarations from his witnesses, personnel records, documents concerning his EEO complaint of discrimination to the VA's Office of Resolution Management, and the transcript of the deposition of Neal Hamilton, a union resource officer for the James A. Haley Hospital where Steele worked.

**1.      Whether Steele's Witnesses' Declarations Should Be Excluded under Rule 37(c)**

The declarations Steele submitted are worth a separate discussion. Steele submitted declarations from Ira Napier, who is the president of the union at the hospital, from Thomas Battaglia, who is a respiratory therapist and union steward, and from Karen Ray who is a respiratory therapist and union steward. Steele also submitted his own declaration.

The first issue of concern is whether these witnesses–Napier, Battaglia, and Ray–were properly disclosed to the defense during discovery. Federal Rule of Civil Procedure 26 requires that a party disclose the name of each individual who is likely to have discoverable information regarding the case, and to supplement that disclosure in a timely manner if additional witnesses

---

[9]Steele testified that he did not recall ever working with Cynthia Laureano, and that he was not aware that Laureano had ever expressed concerns to management regarding his performance. (Steele depo. at 59-60.)

are discovered.  Fed. R. Civ. P. 26(a), (e).  Furthermore, Rule 37(c) imposes a sanction upon a

party for failure to disclose witnesses and information under Rule 26.  Rule 37(c) states that "[i]f

a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the

party is not allowed to use that information or witness to supply evidence on a motion . . . unless

the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).

During his February 17, 2011 deposition, counsel for the VA directly asked Steele to

identify the witnesses who he believed had knowledge to support his claims.  Steele, however,

failed to answer the question.  The following exchange reveals Steele's refusal or inability to

identify his witnesses:

> Q.      Okay.  What witnesses do you have?
> A.      Each incident is a different employee as witnesses.
> Q.      Well, let's go through them, Mr. Steele–
> A.      No, I'm not going through that.
> Q.      Mr. Steele–
> A.      Let's take a break.
> Q.      There's a question–Mr. Steele, sit down.
> A.      No, I'm taking a break.
> Q.      Mr. Steele, it's my deposition.  Please sit down.
> A.      I'm asking you to take a break–
> Q.      I asked you a question.  You answer the question–
> A.      No, I'm not going to answer your question.  I asked–you told me, when
>            we started, if I wanted to take a pee, I could go take a pee.
> Q.      I asked you a question, Mr. Steele, and–
> A.      You told me if I needed to go to the bathroom, I could go to the bathroom.
> Q.      Mr. Steele, are you refusing to sit down and answer these questions?
> A.      No.  I'm going to the bathroom.  I'll be right back.  You're not telling me
>            what to do, sir.  You're not my boss.  You're not my god.
> [The witness left the room, and returned.]
> Q.      Mr. Steele, before you took a break, you testified that you had witnesses to
>            support your allegation that the statements made in [Van Vliet's
>            memorandum regarding the reasons for terminating him] were lies, bogus,
>            and slanderous.  Now, starting with Paragraph 1, please identify the
>            witnesses who you believe support your allegation that the statements in
>            Paragraph 1 are lies, bogus, and slanderous.
> A.      This form was not in the evidence file, and these are all suppositions.  And

7

I don't remember who my witnesses were at this time.

Q.    Okay.  Prior to going to break, you said that you knew of witnesses who
      would refute the statements in Paragraph 1–in the whole document.  Now
      you're saying that you don't know who those witnesses are?

A.    I don't remember at this time.

Q.    Okay.  But you knew before you went to the break; isn't that true?

A.    No, I didn't say that.

(Steele depo. at 54-56.)

Steele either refused to identify his witnesses, or could not remember them.  Nevertheless, two

months later, on April 12, 2011, Steele submitted the declarations of his witnesses–Napier,

Battaglia, and Ray–in support of his response in opposition to the VA's summary judgment

motion.  It was these declarations that prompted the Court to direct the VA to file a reply to

explain to the Court whether the identity of these witnesses had been properly disclosed during

discovery, pursuant to Rule 26.  (Doc. No. 25.)

        In its reply, the VA conceded that Karen Ray had been properly disclosed because,

although Steele did not list her as a witness in his Rule 26 initial disclosures, he identified her as

a possible witness at another point during his deposition.  (Doc. No. 26.)  Regarding Ira Napier,

the VA asserted that he was not listed in Steele's initial disclosures, but the VA was unable to

state whether he was later identified in Steele's untimely interrogatory responses.  The VA made

no argument regarding the disclosure of Battaglia, so the Court assumes that he was properly

identified as a witness.  Thus, the remaining issue is whether Ira Napier was properly disclosed.

        The Court, thereafter, permitted Steele to file a surreply to respond to the VA's

contention that undisclosed witnesses and information should be excluded from the Court's

consideration.  (Doc. No. 30.)  In his surreply, Steele did not present any evidence, such as initial

disclosures or discovery responses, to show that he had properly disclosed Napier as a witness.

(Doc. No. 31.)  Rather, he wrote, "As to Ira Napier, Defendant was well aware of, and indeed,

8

threw his evidence in issue.  By claiming to say what he did, Defendant plainly invited us to talk

to him, and assess his version of what he did and why.  He hardly can be considered

'undisclosed.'" This argument is vague, meaningless, and utterly useless to the Court.

The Court concludes that, pursuant to Rule 37(c), the declaration of Ira Napier must be

excluded from the Court's consideration in ruling on the VA's summary judgment motion.

Steele either refused to identify this witness, or could not remember him, when he was asked to

do so during his deposition.  Steele did not present any evidence to show that he disclosed this

witness to the defense at any other time during discovery.  Furthermore, he has not shown that

the failure to disclose Napier was "substantially justified or [] harmless."  Fed. R. Civ. P. 37(c).

Accordingly, the Court shall not permit Steele to use this witness's declaration.  *See Mee Indus.*

*v. Dow Chem. Co.*, 608 F.3d 1202, 1221-22 (11th Cir. 2011) (ruling that the court did not abuse

its discretion in excluding certain evidence of damages, when the plaintiff failed to include such

evidence in its initial disclosures or discovery responses).[10]

### 2. Whether Portions of Steele's Witnesses' Declarations Should Be Excluded under Rule 56(c)(4)

In its reply, the VA contends that the Court should disregard large portions of the

witnesses' declarations, particularly the declaration of Karen Ray, that contain conclusory

arguments, legal conclusions, statements based on "information and belief," and inadmissible

hearsay, pursuant to Rule 56(c)(4).  That rule provides that "[a]n affidavit or declaration used to

support or oppose a motion must be made on personal knowledge, set out facts that would be

---

[10]The Court alternatively finds, however, that even if the declaration of Ira Napier was not excluded, the Court's ruling would be the same.  Napier's declaration contains immaterial information regarding the union's assistance of Steele during the EEO investigation into his termination.  He does not present any direct or circumstantial evidence of discrimination.

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court agrees that large portions of the declarations of both Thomas Battaglia and Karen Ray are not based on personal knowledge or on facts that would be admissible evidence, and thus must be excluded from the Court's consideration. *See Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007) (ruling that "even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge") (citations omitted)). To further complicate the Court's task, the declarations contain pages and pages of disorganized, rambling thoughts about inconsequential events and details surrounding Steele's employment.

Nevertheless, it is the Court's duty at the summary judgment stage to view all of the evidence in the light most favorable to Steele, and to resolve all reasonable doubts in his favor. Therefore, the Court has dissected certain facts from the rambling and disorganized declarations, and has determined them to be both material and to meet the standard of Rule 56(c)(4). Accordingly, as described below, the Court accepts certain facts culled from these declarations as true.

### a.        Declaration of Thomas Battaglia

Thomas Battaglia's declaration contains 16 paragraphs of rambling, disorganized thoughts and unimportant details. It is not clear to the Court whether, or to what extent, Battaglia actually worked with Steele. What is clear is that Battaglia is a respiratory therapist who served as a union representative for Steele. Battaglia's declaration is written mostly as a response in opposition to Van Vliet's memorandum regarding Steele's termination, in which he

disputes the incidents that lead to Steele's termination.  It appears that Battaglia was not a witness to these incidents, but rather, got involved afterwards to help Steele as his union representative.  Accordingly, the Court excludes from consideration the first 13 paragraphs of Battaglia's declaration because information contained therein is not based on first-hand knowledge or facts that would be admissible evidence.

It is not until the 14th paragraph that Battaglia–in his words–"go[es] over the issue of discrimination that [he] feel[s] may be relevant."  Battaglia states that "Cathy Stevens, the program leader for Spinal Cord Injury is known to make the statement during [Steele's] employment, 'Chuck is not going to hire anymore old people.'"[11]  Battaglia further states that he "witnessed repeated references by both management and staff that 'Mr. Steele, is old.'"  He furthermore states that: Steele was the only person on staff that was referred to with a surname; that he was addressed with a condescending attitude, particularly by Cynthia Laureano; that he was treated differently regarding his schedule; that he was treated poorly as a staff member, which gave the staff the idea that he was incompetent; that "[c]omments were made about him coloring his hair to cover the gray."  For purposes of summary judgment, the Court views these facts in the light most favorable to Steele, and accepts them as true.

### b.     Declaration of Karen Ray

Like Battaglia's declaration, Ray's declaration is written as a response in opposition to Van Vliet's memorandum, as well as the VA's summary judgment motion.  It therefore contains legal conclusions, information that is not based on first-hand knowledge, and immaterial details.

---

[11]Battaglia states that "Chuck" (last name unknown) is the Assistant Chief for Respiratory in the Spinal Cord Injury Center.

Besides the facts listed here, Ray's declaration must be excluded from the Court's consideration.

Ray worked with Steele as respiratory therapist.  Ray states the following: that Christopher Wojkiewicz and John Van Vliet referred to Steele using his last name, in a sarcastic manner; that a group of individuals would comment "Old Man" when referring to Steele and would say he had Alzheimer's disease and dementia and was slow; that Cindy Laureano made comments about Steele dying his hair so he would not look so old; and that the staff would make comments about how slowly Steele was completing his work.  For purposes of summary judgment, the Court views these facts in the light most favorable to Steele, and accepts them as true.

### 3.    Whether Steele's Declaration Should Be Excluded under the Sham Affidavit Rule

The final evidentiary issue concerns Steele's declaration.  In its reply, the VA contends that the Court should disregard the portions of Steele's declaration that are inconsistent with his deposition testimony, under the sham affidavit rule.  Under that rule, "[a] court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010).  This rule, however, "is applied sparingly because of the harsh effect it may have on a party's case."  *Id.* (citation and quotation omitted).  The court must "find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Id.* (citation and quotation omitted).

At his February 17, 2011 deposition, Steele was asked to provide evidence to support his belief that the reasons for his termination were false and discriminatory.  Steele responded, "I know in my mind and my heart and my soul these are all lies."  When the question was

repeatedly posed to him, he responded, "I don't know where [it] [is] right now.  I don't know what [it] [is]. . . . I don't know right now."  (Steele depo. at 52-53.)[12]  Despite his inability to answer these questions, Steele later submitted his own lengthy declaration in which he offered what he believed to be evidence of age discrimination.

Steele should not be permitted to gain an unfair advantage by refusing to answer legitimate questions, which were aimed at uncovering relevant, discoverable information, during his deposition.  Such deceptive tactics are prejudicial to the opposing party and undermine the purpose of the discovery rules, which "is to facilitate resolution of cases on their merits with what is supposed to be an efficient self-executing or self-policed exchange of relevant information."  *Bruggemann v. Amacore Group, Inc.*, 8:09-cv-2562-T-30MAP, 2011 U.S. Dist. LEXIS 53947, at *4 n.1 (M.D. Fla. Apr. 1, 2011) (citations omitted).  On the other hand, the Court cannot go so far as to say that Steele's testimony (or lack thereof) directly contradicts his declaration such that it must be excluded.

Accordingly, the Court has culled certain statements from Steele's declaration, which are material to the issue of whether Steele was discriminated against because of his age.  Steele states: that his supervisors made derogatory comments about his age, appearance, and memory; that he was continuously called "Old Man" and addressed as "Mr. Steele," instead of being

---

[12]The Court discovered only one instance during the deposition in which Steele offered what he believed to be evidence of age discrimination.  He testified that Christopher Wojkiewicz and Jon Van Vliet called him "Mr. Steele" and "Old Man," while they referred to his co-workers by their first names.  Steele testified that Wojkiewicz and Van Vliet began to make these comments within the first two months and continued to do so throughout his employment. (Steele depo. at 16-17.)  The Court views this evidence in the light most favorable to Steele, and accepts it as true.

called by his first name like everyone else; that he was accused of being slow, of having

Alzheimer's disease, and of having dementia because he would give a thorough shift report; and

that there were comments made about him coloring his hair and looking like Ronald Reagan.

For purposes of summary judgment, the Court views these facts in the light most favorable to

Steele, and accepts them as true.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court

must draw all inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.

2006).  The moving party bears the initial burden of showing the Court, by reference to materials

on file, that there are no genuine issues of material fact that should be decided at trial.  *Id.*

When a moving party has discharged its burden, the non-moving party must then go

beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

and admissions on file, designate specific facts showing there is a genuine issue for trial.  *Id.*  In

determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III.    Discussion

Here, Steele contends that the VA discriminated against him by terminating his

employment because of his age, in violation of the ADEA.  That statute prohibits an employer

from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age." 29 U.S.C. § 623(a)(1).  The Supreme Court has interpreted the ADEA's

requirement that an employer took adverse action "because of" age as meaning that age must be

"the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, __ U.S. __, 129

S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009).  In other words, "[t]o establish a disparate-

treatment claim under the plain language of the ADEA . . . , a plaintiff must prove that age was

the 'but-for' cause of the employer's adverse decision." *Id.*  "The burden of persuasion does not

shift to the employer to show that it would have taken the action regardless of age, even when a

plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at

2352.  Thus, the burden of persuasion remains on the plaintiff to prove his ADEA disparate-

treatment claim, and he may do so either by direct or circumstantial evidence. *Id.* at 2351.

  **A.**    **Steele Has No Direct Evidence of Discrimination**

  "Direct evidence of discrimination is evidence which, if believed, would prove the

existence of a fact in issue without inference or presumption.  Only the most blatant remarks,

whose intent could be nothing other than to discriminate on the basis of [a protected

characteristic] constitute direct evidence of discrimination." *Bass v. Bd. of County Comm'rs.*,

256 F.3d 1095, 1105 (11th Cir. 2001) (quotations, alterations, and citations omitted).

Furthermore, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking

process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161

F.3d 1318, 1330 (11th Cir. 1998).  When refuting direct evidence of discrimination, the

defendant's burden "is one of persuasion and not merely production." *Bass,* 256 F.3d at 1104.

Steele has presented evidence that his supervisors referred to him as "Old Man," and as "Mr. Steele," while they referred to his co-workers by their first names.  These comments do not constitute direct evidence of age discrimination, as "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).  To constitute direct evidence, a statement must "(1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).  There is no evidence that the references to Steele as "Old Man" and as "Mr. Steele" related to the decision to terminate him.  Rather, the use of the term "Old Man" is analogous to the name-calling in *Diaz v. AIG Marketing, Inc.*, 396 Fed. Appx. 664, 667, n.2 (11th Cir. 2010), where the Eleventh Circuit characterized the term "old-timer" as "weak circumstantial evidence." *Id.*

Additionally, Battaglia's statement in his declaration that Cathy Stevens, the program leader for the Spinal Cord Injury unit was known to have said that "Chuck is not going to hire anymore old people," does not amount to direct evidence of discrimination.  There is no evidence that Cathy Stevens played a role in the decision to terminate Steele, or that the statement was made in reference to Steele's termination.  Accordingly, "[b]ecause all of these statements require some inference or presumption, they do not constitute direct evidence, but may constitute circumstantial evidence." *Standard*, 161 F.3d at 1330.

### A.      Steele Cannot Prove a Circumstantial Case of Discrimination

To evaluate an age discrimination claim supported by circumstantial evidence, the Court

uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.
2d 668 (1973), burden-shifting analysis.[13]   *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th
Cir. 2000) (en banc) (applying the *McDonnell Douglas* framework to circumstantial evidence in
an ADEA case).   Under this framework, the plaintiff must raise an inference of discrimination by
establishing a prima facie case of discrimination.   *McDonnell Douglas Corp.*, 411 U.S. at 802,
93 S. Ct. at 1824.   The burden then shifts to the defendant to "articulate some legitimate
nondiscriminatory reason" for the alleged discrimination.   *Id.*   Once the defendant produces such
a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for
discrimination.   *Id.* at 804, 93 S. Ct. at 1826.   To avoid summary judgment, the plaintiff must
produce sufficient evidence to show "that the employer intentionally discriminated against him
because of his [age]."   *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).   Here, Steele
cannot establish a prima facie case of discrimination, or that the VA's legitimate, non-
discriminatory reasons for terminating him were pretext to mask unlawful age discrimination.

### 1.     Steele cannot establish a prima facie case of age discrimination.

To establish a prima facie case of age discrimination under the ADEA, Steele must
establish that he: "(1) was a member of the protected age group, (2) was subjected to adverse
employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a
position to a younger individual."   *Chapman,* 229 F.3d at 1024.   Here, the VA concedes that

---

[13]The Court acknowledges that the Supreme Court, in *Gross*, stated that it "has not
definitively decided whether" the *McDonnell-Douglas* evidentiary framework is appropriate in
the ADEA context.   *Gross*, 120 S. Ct. at 2349 n.2.   However, even after *Gross*, the Eleventh
Circuit and district courts have continued to analyze ADEA claims under this framework.
Therefore, the Court will continue to employ the *McDonnell-Douglas* framework, but will do so
with the understanding that the plaintiff must establish that age was the but-for cause of his
termination–not simply a motiving factor.

Steele was a member of a protected class by virtue of his age, was qualified to be a registered respiratory therapist, and that the termination of his employment was an adverse employment action.  The VA contends, however, that Steele cannot show that he was replaced by a substantially younger individual.

The VA has presented undisputed evidence that Steele's position was filled by a female, who was 41 years old.  At the time he was terminated, Steele was 54 years old.  The U.S. Supreme Court and the Eleventh Circuit have squarely held that the plaintiff in an ADEA need not prove that the person who replaced him or her was outside the protected class (i.e., younger than 40-years-old); rather, the plaintiff must show that his or her replacement was "substantially younger" than him or her.  *Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) (noting that, "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class"); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432-33, n.10 (11th Cir. 1998).

The Court concludes that Slater has not shown that his replacement was substantially younger than him.  There is no bright-line rule that defines "substantially younger;" however, the Court concludes that a 13-year age difference, without more, is insufficient to meet this standard. *See e.g., Green v. Staples, Inc.*, Case No. 6:08-cv-2034-Orl-28DAB, 2010 U.S. Dist. LEXIS 82935, at *13, n.3 (M.D. Fla. Aug. 11, 2010) (noting that "a forty-year-old plaintiff would presumably be unable to establish a prima facie case by pointing to a thirty-nine-year-old comparator, but a sixty-year-old could state a case by relying on a forty-year-old comparator");

18

see also, Matthews v. City of Dothan, Case No. 1:04-cv-640-WKW, 2006 U.S. Dist. LEXIS 91711, at *39 (M.D. Fla. Dec. 18, 2006) (ruling that a six-year age difference was insufficient to create an inference of age discrimination, when no other evidence of discriminatory animus was present).

This case is distinguishable from those cases in which a smaller age difference was deemed sufficient to meet the "substantially younger" element of the ADEA prima face case. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (holding that a 42-year-old plaintiff, who was replaced by a 37-year-old, met the "substantially younger" element of the prima facie ADEA case); Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997) (holding that a 39-year-old was "substantially younger" than a 42-year-old).  In Damon and Carter, the plaintiffs held their positions for many years, performed them well before being replaced, and presented quite a bit of evidence of discriminatory animus beyond a mere age difference.  Here, Steele held his job for one year and presented little evidence of discriminatory animus.  Accordingly, the VA is entitled to summary judgment because Steele has not met his burden of establishing a prima facie case of age discrimination.

> **2.      Steele cannot establish that the VA's legitimate, nondiscriminatory reasons for his termination were pretextual.**

Even assuming that Steele established a prima facie case of age discrimination, he has failed to present sufficient evidence that the VA's legitimate, nondiscriminatory reasons for terminating him were pretextual.  Here, the VA's reasons for terminating Steele's employment are articulated in Van Vliet's memorandum regarding the decision.  Some of the reasons for the decision included Van Vliet's belief that Steele: had poor communication skills; was unwilling to work with management; had a negative affect on the nurses with his attitude; was inflexible

19

regarding his work schedule, particularly taking sick leave in conjunction with a weekend or holiday; was unable to work without assistance; was unable to work as a team player; and was preparing inadequate patient records.  Van Vliet documented examples of these problems in his memorandum, and bolstered his evaluation with complaints by Nurse Rojas and supervisor Cynthia Laureano.  Assistant Chief Rick Smith, Section Chief Christopher Wojkiewicz, and Department Chief William Anderson all agreed with Van Vliet's recommendation.

 In determining whether the plaintiff has established pretext, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030.  "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.*  To rule in favor of the VA, the Court "need not determine that the [VA] was correct in its assessment of the employee's performance; it need only determine that the [VA] in good faith believed plaintiff's performance to be unsatisfactory." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991.)

At his deposition, Steele testified that the stated reasons for his termination were "slanderous, bogus, lies."  When pressed to provide evidence of this belief, Steele offered, "I know in my mind my heart and my soul these are all lies."  After refusing to identify the witnesses and information that could support his belief, Steele admitted, "I don't remember at this time."  The Court gives no consideration to Steele's assertions because "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [, as here, an employer] has offered . . . extensive evidence of

legitimate, non-discriminatory reasons for its action." *Carter*, 870 F.2d at 585.

The Court cannot second-guess the VA's business judgment. The record is undisputed that Van Vliet, Smith, Wojkiewicz, and Anderson all believed that Steele had exhibited certain performance problems, and that such problems warranted his termination. Steele has not presented any evidence to contradict or rebut their beliefs. The issue is not whether Steele actually exhibited these performance problems, but whether his supervisors believed that he did, and believed that his performance problems warranted termination. Indeed, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Nix v. WLCY Radio/Rahall Commc'ns.*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Steele attempts to establish pretext by accusing the VA of tampering with critical documents in his personnel files, in order to cover up discrimination. For example, Steele points to typographical errors in his employment letter and another hiring document. He also points to whiteout and blue-out on several work papers in his files. The Court must reject this feeble attempt at showing pretext because Steele has offered no explanation as to why or how the tampering of documents could "cover-up" discrimination, or how he was negatively affected by such alterations. Steele has not offered any reason why such errors are anything more than mere typographical and filing mistakes. The mere fact that there were errors in Steele's hiring documents, without more, does not show a "cover-up," or a discriminatory animus.

In summary, the Court finds that Steele has not established pretext in this case. The undisputed record shows that Van Vliet, and several of Steele's supervisors believed that Steele

21

had exhibited certain performance problems, and furthermore, believed that such problems warranted his termination.  Steele has not provided any evidence, beyond his own speculation, and speculation of his witnesses, that the VA's proffered reason for his termination was pretextual or that he was the victim of intentional age discrimination.  Accordingly, the VA is entitled to summary judgment.

**IV.    Conclusion**

In conclusion, viewing the entirety of the record in the light most favorable to Steele, there are no genuine issues of material fact as to his claim of age discrimination.  Accordingly, the VA's Motion for Summary Judgment (Doc. No. 19) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant the United States Department of Veterans Affairs and against Plaintiff Robert Steele, to close this case, and to terminate any pending motions.  The pretrial conference previously scheduled in this case for June 7, 2011 is hereby cancelled, and this case is removed from the Court's July 2011 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of June, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record